CASE No. 927.

GADSDEN v. WHALEY.

1. One of two executors qualified, and action was brought against him for a debt of his testator, and judgment obtained. Pending appeal, the qualified executor died. Meantime, under other proceedings had, the

estate was put into the hands of a receiver, and the receiver declined to prosecute the appeal, but the other executor named in the will then qualified, and moved to have his name substituted on the record in the place of the deceased executor. *Motion granted.*

2. The receiver declining to prosecute the appeal, the respondent moved to dismiss it. *Motion refused.*

3. A receiver of an estate has no right to interfere in a case pending at the time of his appointment, without an order of the court that appointed him.

4. One may make gift of personal property to another, and constitute himself the trustee thereof, by declaring that he holds such property *in præsenti* for the donee. Such trust may be created and established by parol, and may be proved by circumstances as well as by express declarations.

5. Concurrent findings of fact in an equity case, by jury and Circuit judge, sustained, not being against the weight of the evidence.

Before HUDSON, J., Charleston, March, 1879.

This was an action by Edward H. Gadsden and Rebecca H., his wife, instituted in 1873 against William Whaley, sole qualified executor of Joseph Whaley, deceased, for an account of certain moneys alleged to have been given her by her grandfather, the said Joseph Whaley, in his lifetime, and afterwards held by him as trustee for her. The plaintiff, Rebecca, was the only child of Thomas Whaley, who was a son of Joseph, and she was seventeen years of age at the time of her father's death in 1855. She afterwards intermarried with E. H. Gadsden. The testimony showed that of the property so claimed, a large part was lost by unsecured investments made for Joseph Whaley, by William Whaley, his son and agent.

Three executors were named in the will of Joseph Whaley, but William Whaley alone qualified. After the decree of Judge Hudson, and after appeal therefrom by William Whaley, William Whaley died. W. J. Whaley, another of the executors named, then qualified as such.

The receiver of the estate of Joseph Whaley, appointed in the case of Fraser & Dill v. City Council of Charleston, William Whaley, executor, and others, notified counsel in July, 1879, that he was advised that no sufficient grounds existed to justify an appeal from the decree of Judge Hudson, and that further

proceedings would be at the risk of the party taking them, for which neither the receiver nor the funds in his hands would be responsible.

All other matters necessary to a full understanding of the case are stated in the. opinion of the court.

*Mr. B. H. Rutledge*, for appellant.

The preliminary, and, at the same time, ruling question in this case is, did Joseph Whaley constitute himself a trustee of the fund in question for Mrs. Rebecca Gadsden at any time? If not, there is the end of the case. There is no formal instrument of trust. If a trust exists it must have been created, and must be established by parol, and from acts and circumstances, and loose writings and expressions. Is this practicable—and, if so, under what conditions? A valid trust of personal property may be created, and proved by parol declarations. *Hill on Trustees* 57. But the subject matter and purposes of the trust, and the persons to take, must be clearly ascertained. *Perry on Trusts*, §§ 77, 86; 3 *Brown's Ch.* 577, *note;* 3 *Ves., Jr.,* 708; 3 *Cow.* 580. The following recent cases contain the latest and best exposition of the legal doctrines applicable to this case. 4 *DeG., F. & J.* 274; 1 *Chan. Ap.* 28; *L. R.* 19 *Eq.* 241. See, also, *Lewin on Trusts,* *82, *83, *98; *Perry on Trusts,* §§ 96–102. And analogous cases in 1 *S. C.* 181; 4 *Id.* 152; 5 *Id.* 461; 2 *Hill's Ch.* 591; 3 *Rich. Eq.* 398; *L. R.* 20 *Eq.* 329; 97 *U. S.* 639. According to the law as declared, the elements requisite to deprive a man *of his own property* for the benefit of another, when there is no other than *a voluntary consideration*, are these:

If in the form of a gift; (1.) There must be *an intention* on his part to give; (2.) There must be *an execution of that intention* by appropriate act, *so as to complete the gift.*

If in the form of a declaration of trust: If the trust is to be created by parol declarations and acts and circumstances, it must be by words and acts "which admit of no other interpretation than that he himself had ceased to be, and some other person had become the beneficial owner of the subject of the gift or transfer, and that such legal right to it, if any, as he retained, was held by him in trust for the donee."

There is no such testimony in this case.

*Mr. James Conner*, for respondent.

Was there a trust created? *Perry on Trusts,* § 79. That is a question of fact, and has been settled. 1 *S. C.* 101, 116, 325; 4 *S. C.* 125, 249; 6 *Id.* 310. A trust in personalty may be created by parol. 4 *Desaus.* 505; 2 *McC.* 255; 3 *Hill* 222; 6 *Rich.* 315. The trust created, the *cestui que trust* could enforce her rights. *Perry on Trusts,* §§ 96–99. And although without valuable consideration, equity will enforce it. 18 *Ves.* 140; 6 *Ves.* 656; 1 *Keen* 551; 2 *Keen* 124; 1 *Hare* 460; 1 *Phillips* 153. A very strong case is *Gray* v. *Gray,* 2 *Simms.* (*N. S.*) 273. No particular form of words is necessary. 1 *DeG., M. & G.* 176; *L. R. 3 Eq.* 686; *L. R. 4 Eq.* 562; *L. R. 10 Eq.* 475; 2 *Hill's Ch.* 591; 11 *R. I.* 266; 3 *Cent. L. Jour.* 315. As to enforcement of voluntary trusts when completed, see *Perry on Trusts,* § 98.

October 15th, 1880. The opinion of the court was delivered by

McGOWAN, A. J. In order that the rulings in this case may be understood, it is necessary to make a short statement of facts.

Joseph Whaley, a man of large wealth, had two sons, Thomas and William, and one daughter. He had permitted his son Thomas to cultivate one of his plantations on Wadmalaw Island, until he died, in 1855, leaving a widow and one child, Rebecca H., who intermarried with Edward H. Gadsden, the plaintiff. Soon after the death of his son Thomas, Joseph Whaley sold the plantation and slaves on Wadmalaw for $25,577, and after some correspondence upon the subject with his granddaughter and her mother, in which, among other things, he said: "In the course of the winter I will make up my mind in what way the property shall be disposed of," he placed the proceeds of sale in the hands of his other son, William, a lawyer, living in Charleston, who, with the knowledge and consent of his father, kept this fund separate from other business, and opened an account of receipts and expenditures under the caption "Colonel Joseph Whaley, Rebecca Whaley, in account with William Whaley, agent." The principal item among the expenditures was one recurring every year, from 1857, for money "paid to Mrs.

Whaley for support of Rebecca." This account was made up to August 10th, 1865, and then transferred to another book. A large part of the fund was lost in Confederate transactions during the war by William Whaley, agent. In 1869 Joseph Whaley executed his will, in which he made no provision for his granddaughter Rebecca, assigning as a reason that he had " already advanced and made over to his granddaughter, Rebecca Gadsden, the proceeds of the sale of his plantation and negroes on Wadmalaw Island." In 1872 Joseph Whaley died, and of those named as executors of his will, only his son William qualified at that time, and against him, as such executor, Mrs. Gadsden, in 1873, instituted this proceeding for an account of the proceeds of the Wadmalaw property. The case came on for trial in April, 1875, before Judge Reed, who referred it to a jury, and they found for the plaintiff the sum of $15,129 ; upon which verdict judgment was entered. This was more than the value of the remnant of assets after the war, and the defendant appealed. The Supreme Court set the verdict aside on the ground that, being clearly an equity case, it was error to base the judgment solely upon the verdict of the jury and not upon the decision of the Circuit judge. *Gadsden* v. *Whaley*, 9 *S. C.* 147.

The case was heard a second time, in March, 1879, by Judge Hudson, who, upon the evidence taken at the first trial, decreed for the plaintiff the identical sum which had been found by the jury, and from that judgment the defendant again appeals to this court.

In the meantime, in 1874, the case of Fraser & Dill *v.* City Council of Charleston was instituted, and in that case orders were made to call in the creditors, marshal the assets, and for the appointment of a receiver of the estate of Joseph Whaley. Mr. Dingle was first appointed receiver, but he declined to act, and in 1878 Thomas W. Bacot, Esq., was appointed and qualified as the receiver of the estate of Joseph Whaley, with all the authority which had been previously conferred in the orders appointing Mr. Dingle. See 13 *S. C.* 533.

When the case was called in this court the attorney for the defendants moved for an order substituting the name of *William James Whaley,* as defendant executor, in the place of that of

William Whaley, the defendant on the record, who had died pending the appeal. The attorney for the plaintiff objected to the order proposed, and, as Mr. Bacot, the receiver, had given notice to the defendant to abandon the appeal, he made a preliminary motion to dismiss the appeal, on the ground that *the executor* had no interest in the cause, or right to appeal from the decision therein.

We regard the order proposed by the defendant as within the intent of Rule 4 of this court, and the motion to substitute the name of William James Whaley, a qualified executor of the will of Joseph Whaley, in place of that of William Whaley, defendant, is granted. The appeal will proceed against William James Whaley as executor of Joseph Whaley, defendant.

We cannot grant the preliminary motion to dismiss the appeal. An executor holds his letters testamentary from the judge of Probate, an officer of the law, but his appointment is by the testator himself. It seems that under the act of 1869, (*Gen. Stat.* 189), the judge of Probate, under certain circumstances, may discharge an executor upon his own application; but we think it has always been held in this state that the court of equity has not the power to remove an executor by the appointment of a receiver or otherwise. *Hagood* v. *Wells,* 1 *Hill's Ch.* 60; *Ex parte Galuchat, Ib.* 149.

In a proper case the court will appoint a receiver who is an executive officer—the hand of the court—to administer the assets of the estate under the direction of the court, which may, for the purpose of preserving the property, restrain the executor from meddling with the management of the estate, and compel him to give up the control of it to the receiver; but such appointment and administration do not remove the executor or destroy his character as the legal representative of the estate. The authority of a receiver rests only in the orders of the court by which he is appointed. By virtue of any general authority as receiver, he has no right to sue or be sued or defend. 1 *Wait's Pr.* 202; *High on Receiv.,* §§ 209, 254, 724.

A receiver cannot interfere in a case *pending* at the time of his appointment until he has been made a party to the action by order of the court. *Tracy* v. *First Nat. Bank of Selma,* 37 *N. Y.*

*Court of App.*, 10 *Tiffany* 583; *High on Receiv.*, §§ 258, 264. In the case of Tracy *v.* The Bank, it is said: " The objection that the receiver has no status in court I regard as fatal. The action was commenced against the bank before the appointment of a receiver, and so far as the papers show is still in progress under that title. There is no legal objection to its continuance in that form until the final judgment is obtained, and such is the common practice in this state."

The case before us had been long pending when the receiver was appointed, and, therefore, he had no right to appear in it without an order of the court making him a defendant. No such order appears as one authorizing him to defend suits pending against the executor at the time of his appointment. The strongest words in those orders are " to take possession of all the property of the estate of Joseph Whaley, and to administer the same under the orders of the court, and that he hath leave to institute such proceedings as he may be advised may be necessary and proper to try the validity of any claims against the estate of Joseph Whaley, and defend such proceedings as may be instituted against *him*," &c. This case is not against *him*, and the order does not make him a party to a suit then pending against the executor. There being no such order, he is a stranger to this proceeding. The motion to dismiss the appeal is refused.

As it respects personal property, the law remains unchanged by the statute of frauds, and a valid trust of such property may not only be still vested, but, if necessary, established by parol declarations. *Hill on Trustees* 57; *McFadden* v. *Jenkyns*, 1 *Phil.* 153; *Fogg* v. *Middleton*, 2 *Hill's Ch.* 598. It was in the power of Joseph Whaley to make a parol gift of the proceeds of his Wadmalaw plantation, either by placing them in the hands of a trustee or by creating himself a trustee for that purpose. No particular form of words is necessary to create a trust or to make the person creating the trust himself the trustee. It is enough if he orally, or in writing, explicitly or impliedly declare that he holds *in præsenti* for another. The facts do not authorize the view that William Whaley was made trustee. He gave no bond and always styled himself " agent of his father," acting under his direction. Did Joseph Whaley create himself a trustee of this

fund for his granddaughter, Mrs. Gadsden? Such a trust may be proved by facts and the acts of the parties, as well as by the express declarations of the donor. Whether a trust is created or not, is a question of fact in each case, and the court, in determining the fact, will give effect to the relations of the parties, the nature and situation of the property, and the objects the settler had in view in making the disposition. We think the evidence to establish such a trust should be full and clear, for the reason that if established the relation subsisting between the giver and the recipient of his bounty, is changed—the voluntary benefactor, out of his own means, being thereby made a trustee with all the liabilities incident to a debtor. No question can arise in this case as to *completing* an imperfect voluntary gift, for both parties agree that a perfect gift was made at some time before 1869, when the donor executed his will, which declared that he "*had already advanced and made over* to Mrs. Gadsden the proceeds of the Wadmalaw property." The plaintiff insists that the proceeds were "made over," and the character of a trust impressed upon them when they were set apart and the account opened with Mrs. Gadsden in 1857 ; and the defendant contends that it was not done by Joseph Whaley making himself trustee at the time the account was opened, but by appointing William Whaley trustee at some time after the war, and that, therefore, the gift only covered the remnant of the fund which survived and was in existence at that time. This substantially narrows the controversy down to the question as *to the time when the proceeds were "made over."* This question of fact the jury found for the plaintiff, and in that decision the Circuit judge concurred. Being an action for equitable relief, this court may reconsider all the evidence, but the safe principle upon which it generally acts is not to overrule the conclusions of the Circuit judge upon doubtful questions of fact, though the court might not have reached the same conclusion he did. The rule is more strictly adhered to when there is concurrence between a referee and the Circuit judge. As to its probable correctness, the verdict of a jury is as strong as the report of a referee. In the last case upon the subject, *Adger & Co.* v. *Pringle*, 11 *S. C.* 548, it is said : " The question of fact having been decided by the referee, and his decision

having been confirmed by the Circuit judge, their decision must be regarded by us as conclusive, unless it is without any testimony to sustain it, or is manifestly against the weight of the evidence."

We cannot say that the decree in this case is "against the weight of the evidence." On the contrary, there are facts which tend to support it.

The father of Mrs. Gadsden died in possession of the Wadmalaw plantation, and from that time her grandfather always connected her with that property. Upon the death of his son he wrote at once: "In the course of the winter I shall make up my mind in what way the property is to be disposed of. I have directed Messrs. O'Hear, Roper & Stoney to pay the proceeds of the crop to your mother for your joint support."

After the property was sold he kept the proceeds separate, and placed them in the hands of his son William as his agent, who, by his direction, or with his knowledge, opened an account of receipts and expenditures under the caption, "Colonel Joseph Whaley, Rebecca Whaley, in account with William Whaley, agent," and each year made payments out of the fund for the support of Mrs. Gadsden.

The testator, during his lifetime, told Mrs. Gadsden to go to her uncle William when she wanted money, as he had provided for her, and her uncle William would give it to her.

In 1869 Joseph Whaley executed his will, by which he gave nothing to Mrs. Gadsden, assigning as a reason for so doing that he "*had already advanced and made over to her* the proceeds of the sale of the Wadmalaw property." The terms of the will describe appropriately the transaction of 1857, in depositing said "proceeds" and in opening an account with Mrs. Gadsden. The natural inference is that they refer to the beginning of the business and not to any intermediate new arrangement, and cover, not a mere remnant which survived the war, but, according to the words of the will, "*the proceeds* of the sale of the Wadmalaw property."

The judgment of the Circuit Court is affirmed and the appeal dismissed.

McIVER, A. J., concurred.